IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| United States of America, | ) | C/A No.: 3:23-1733-SAL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| 0.012 Acres, More or Less, | ) | ORDER |
| Situated in Lexington County, | ) | |
| State of South Carolina, and CSS | ) | |
| Land LLC et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The United States of America (the "Government") filed this action on April 26, 2023, at the request of the Administrator of the Federal Aviation Administration through the Federal Aviation Administration Acquisition Executive, for the taking of an interest in real property in Lexington County, South Carolina (the "Property"), under the power of eminent domain through a Declaration of Taking [*see* ECF No. 1-1] and for the determination and award of just compensation to the owners and parties in interest.

This matter comes before the court on motion to compel discovery responses filed by CS Land LLC, et al. ("Defendant"). [ECF No. 25]. Pursuant to 28 U.S.C. § 636(b)(1)(A), this motion has been referred to the undersigned for disposition. For the following reasons, the undersigned grants in part and denies in part Defendant's motion.

I.      Factual and Procedural Background

Defendant states that "[t]his is a small total-take condemnation of property" that has been used as a tower site, or, more specifically, as a low-level windshear alert system ("LLWAS") remote station for the last twenty years. [ECF No. 25 at 1, 3].[1] For the parties to determine just compensation for the property, Defendant seeks in discovery for the Government to identify the leases, purchases, or condemnations of other LLWAS remote station and other tower sites in South Carolina and to provide documentation for any such transactions from the last ten years. *See id.*

The Government argues, however, that Defendant seeks discovery that is neither relevant nor proportional to the needs of this case, further arguing that based on Supreme Court precedents, the fair market value is not the value the Government pays for property and such value has no relevance to determining just compensation in a condemnation proceeding. [ECF No. 29 at 1–2 (citing *Olson v. United States*, 292 U.S. 246, 256 (1934) and *United States v. Miller*, 317 U.S. 369, 375 (1943)), *see also id.* at 6 ("Value to the Government of different properties on which the Government operates

---

[1] The Government agrees that this is a small total-take condemnation, stating that "[t]he acquisition in this case measures approximately one-one-hundredth (0.01) of one acre, or approximately 533 square feet" and that "[t]he United States' estimate of just compensation in this case was $12,500." [ECF No. 29 at 13 n.7, *but see* ECF No. 30-2 (estimating just compensation at $93,750)].

2

LLWAS remote stations and/or other 'towers' is not a barometer of market value for the property acquired in this case.")].

The four specific discovery requests at issue are as follows:

INTERROGATORY NO. 6:

Identify the location of all Low Level Wind Shear Alert Sensors (LLWAS) in South Carolina and for each specify: 1) whether Plaintiff leased, purchased, or condemned the land on which the tower is located; 2) the cost paid for the lease, purchase, or condemnation of such land; and 3) when any such was lease, purchase, or condemnation was effectuated.

INTERROGATORY NO. 7:

Identify the location of all towers owned by Plaintiff in South Carolina, whether communications, satellite, antennas, or other, and for each specify: 1) whether Plaintiff leased, purchased, or condemned the land on which the tower is located; 2) the cost paid for the lease, purchase, or condemnation of such land; and 3) when any such lease, purchase, or condemnation was effectuated.

REQUEST NO. 8:

For any and all Low Level Wind Shear Alerts Sensors (LLWAS) identified in Plaintiff's answer to Interrogatory No. 6, provide a copy of any lease, amended lease, deed, or condemnation notice entered into, executed, or filed within the last ten (10) years.

REQUEST NO. 9:

For any and all towers owned by Plaintiff in South Carolina that were identified in Plaintiff['s] answer to Interrogatory No. 7, provide a copy of any lease, amended lease, deed, or condemnation notice entered into, executed, or filed within the last ten (10) years.

[ECF No. 25-1 at 9–11, ECF No. 25-2 at 10, 12].

II.   Discussion

    A.   Standard of Review

"All civil discovery, whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1) in two fundamental ways. First, the matter sought must be 'relevant to any party's claim or defense.'" *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) (citing Fed. R. Civ. P. 26(b)(1)). "[Second,] Rule 26 [] imposes another requirement: discovery must also be 'proportional to the needs of the case.'" *Id.* (citing same).

    B.   Analysis

In general, the Federal Rules of Civil Procedure "govern proceedings to condemn real and personal property by eminent domain, except as [Rule 71.1] provides otherwise." Fed. R. Civ. P. 71.1(a). Relevant here, that rule provides,

> (1) In an action involving eminent domain under federal law, the court tries all issues, including compensation, except when compensation must be determined:
>
> > (A) by any tribunal specially constituted by a federal statute to determine compensation; or
>
> > (B) if there is no such tribunal, by a jury when a party demands one within the time to answer or within any additional time the court sets, unless the court appoints a commission.

Fed. R. Civ. P. 71.1(h)(1).

The Supreme Court has explained:

> [T]he Rule's basic structure makes clear that a jury in federal condemnation proceedings is to be confined to the performance of a single narrow but important function—the determination of a compensation award within ground rules established by the trial judge . . . . [W]hen a jury is afforded, the sweeping language of the final sentence of the Rule discloses a clear intent to give the district judge a role in condemnation proceedings much broader than he occupies in a conventional jury trial. It is for him to decide "all issues" other than the precise issue of the amount of compensation to be awarded. It follows that it is for the judge to tell the jury the criteria it must follow in determining what amounts will constitute just compensation, and that in order to do so he must decide . . . preliminary matter[s].

*United States v. Reynolds*, 397 U.S. 14, 20 (1970); *see also United States v. 8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 251–52 (4th Cir. 2022) ("The judge should . . . instruct the jury on the issue of just compensation, consistent with his preliminary factual determination.") (citing *United States v. 105.40 Acres of Land*, 471 F.2d 207, 212 (7th Cir. 1972)).

"The Fifth Amendment requires that the United States pay 'just compensation' . . . whenever it takes private property for public use." *United States v. 50 Acres of Land (Duncanville)*, 469 U.S. 24, 25–26 (1984). "The [Supreme] Court has repeatedly held that just compensation normally is to be measured by 'the market value of the property at the time of the taking contemporaneously paid in money.'" *Id.* at 29 (quoting *Olson*, 292 U.S. at 255). This sum is typically "measured by the use that would bring the highest price—the 'highest and best' use." *United States v. 69.1 Acres of Land*, 942 F.2d 290, 292 (4th Cir. 1991). However, "[i]t is not fair that the government

5

be required to pay the enhanced price which its demand alone has created . . . . [because i]t does not reflect what a 'willing buyer would pay in cash to a willing seller' in a fair market." *United States v. Cors*, 337 U.S. 325, 333 (1949) (citing *Miller*, 317 U.S. at 374).

As stated by the Fourth Circuit, "the best evidence of property value comes from comparable land sales, where the more similar the land is the more probative the sale price is." *United States v. 269 Acres, More or Less, Located in Beaufort Cnty. S.C.*, 995 F.3d 152, 164 (4th Cir. 2021). "Courts have generally recognized that comparability is a function of three variables: the respective characteristics of the properties, their geographic proximity to each other, and the closeness in time of the sales." *Id.* (citation omitted).

At this juncture in the case, the issue before the court is limited to the following discovery dispute: are details surrounding the Government's acquisition of other properties in South Carolina, that it has put to the same or similar use, relevant in the determination of the just compensation for the Property at issue here.

The Government's position is that the information sought by Defendant "reveals its intent to determine value to the Government rather than market value" of the Property, something Defendant is forbidden to do [*see* ECF No. 29 at 6], where the Supreme Court has held that value to the Government "must be excluded as an element from market value." *Miller*, 317 U.S. at 375;

6

*see also Cors*, 337 U.S. at 333 ("The special value to the condemnor as distinguished from others who may or may not possess the power to condemn has long been excluded as an element from market value.") (citation omitted)). Defendant appears to concede as much, arguing that "special value to the Government" is not at issue and, instead, "it is fair market value that must be paid, and sales involving a governmental entity can be relevant for fair market value if they are arms-length transactions." [ECF No. 30 at 1 (emphasis removed)].

The Government's arguments, hinging on the Government's position that "value to the Government is not market value" [ECF No. 29 at 6], appear premature. The court cannot determine at this time that the value of the Property, or any similar property previously used or acquired by the Government, is solely a special value to the Government, a value that does not exist in the marketplace. The court is unable to so determine at this juncture, particularly where, as argued by Defendant:

> Given local zoning laws, altitude, the proximity of nearby roadways, or other neighborhood and geographical considerations, properties can have a highest and best use as a tower site based on a variety of reasons. CSS Land's already-produced appraisal report, for example, identified three other comparable tower site properties that were all used for private, commercial purposes. The Government has no legal or factual basis to argue that the subject property is only suited for an LLWAS. Thus, the Government's "special value" argument is at best premature.

7

[ECF No. 25 at 4].[2]

The Government additionally argues that evidence related to condemnations are irrelevant in this context. [ECF No. 29 at 9]. Generally, "[t]he rule in condemnation cases, where valuation of property is in issue . . . is that the price paid in settlement of a condemnation proceeding involving similar land is not ordinarily admissible since [s]uch payments are in the nature of compromise, to avoid the expense and uncertainty of litigation, and are not voluntary and do not represent fair indications of market value." *Havee v. Belk*, 775 F.2d 1209, 1220 (4th Cir. 1985) (citation omitted). However, there is a "recognized exception[] to this rule . . . in cases of voluntary sale, or where 'the fact that parties were condemnor and condemnee either was not known or had no influence because the sale was not in connection with, or in anticipation of, condemnation proceedings.'" *United States v. 10.48 Acres of Land*, 621 F.2d 338, 339 (9th Cir. 1980) (quoting *Slattery Co. v. United States*, 231 F.2d 37, 41 (5th Cir. 1956)); *see*

---

[2] Related, the parties dispute the Property's "highest and best use," with Defendant arguing the Government's use of the property on the date of the taking, as a LLWAS, is the highest and best use, and the Government arguing "[t]he subject property's highest and best use cannot be predicated on a demand created solely by the project for which the property is acquired." [ECF No. 29 at 7]. Like the analysis above, the court need not, and indeed cannot, determine "highest and best use" of the Property at this preliminary stage of the proceedings.

*also United States v. 1735 N. Lynn St., Situated in Rosslyn, Arlington Cnty., Com. of Va.*, 676 F. Supp. 693, 702 (E.D. Va. 1987) (same).

Here, Defendant's discovery requests seek comparable land sales data involving the Government and property used by the Government in similar ways to the instant Property. Such evidence may be inadmissible if used to determine just compensation of the Property based on value to the Government. However, such evidence may be admissible to the extent it involves arms-length transactions that are sufficiently comparable. These are fact-intensive inquires that do not lend themselves to resolution at the early stage of this case. *See, e.g., United States v. Certain Land Situated in City of Detroit, Wayne Cnty., State of Mich.*, 547 F. Supp. 680, 684 (E.D. Mich. 1982) ("Thus there is a factual dispute which must be decided through testimony at trial. If, after hearing all of the testimony, the Court finds that the presence of U.S. Customs is an essential part of the appraisal and that this constitutes 'hold-up' value under *Cors*, the jury will be instructed not to consider any element of value based on the presence of U.S. Customs on parcel A1. But this issue cannot be resolved on a motion in limine prior to trial.").

The Government additionally objects to Defendant's discovery requests on proportionality grounds, taking issue with the requests for all of South Carolina and for all towers (not just LLWAS), also arguing national security interests may be implicated.

9

The Fourth Circuit has instructed that "[i]dentifying comparable land sales is a highly factual endeavor," addressing the government's objections to alleged disparate comparisons as follows:

> The government argues that the land sales Hartnett relied on are not sufficiently similar to the Property because of their sizes, locations, infrastructure, and ready development. But comparisons are rarely identical. *See 320.0 Acres*, 605 F.2d at 798 ("In most cases, of course, there are no open market sales 'ideally' comparable."). That is why courts rely on experts to select good comparisons and make adjustments for the condemned property's differences. *See id.* at 798, 802; *68.94 Acres*, 918 F.2d at 393. Even the government's appraiser admitted the Property was unique and looked outside Beaufort for comparable sales. And his land-sale comparisons were also significantly different from the Property.

*269 Acres*, 995 F.3d at 165 n.8.[3]

Based on the direction in *269 Acres*, the court does not discern Defendant's request for comparable land sales data in all of South Carolina to be disproportionate to the needs of the case.

Additionally, the Government criticizes that the words "towers" and "Plaintiffs" have not been defined, arguing Defendant's use of these broad terms will result in an unduly burdensome response:

---

[3] In *269 Acres*, the landowner's expert "found no comparable arm's-length sales in Beaufort County and so relied on four land sales that took place outside the county, three in Berkeley County and one in Charleston County" and the government's expert "considered four comparable land sales, two in Beaufort County, one near Charleston, and one near Savannah, Georgia. Some of those sales were unusual, however: one involved land with soon-to-expire wetlands permits and another was a bank's sale of a park bought at a foreclosure auction to the City of Beaufort." 995 F.3d at 159–61.

10

> Defendant fails to define the term "towers" . . . . Defendant's refusal to define this term obscures a basic fact: "tower" is a vague term that could include many different uses, e.g., cell phone towers, water towers, towers supporting military infrastructure, towers supporting communications between commercial airline pilots and FAA ground control, towers broadcasting radio waves, aerial surveillance radars, towers supporting scientific instruments, satellite communications towers, or weather radars . . . . This failure, taken together with Defendant's failure to define "Plaintiff," leaves the United States to assume that Interrogatory No. 7 seeks information related to all "towers" owned and/or operated within the State of South Carolina by the United States rather than any of its individual departments or agencies.

[ECF No. 29 at 12–13].

The undersigned agrees with the Government that these terms, "towers" and "Plaintiff" may include a significant number of physical entities and a significant number of governmental departments and that "[m]ultiple departments and agencies likely make use of 'towers' within the State of South Carolina." *Id.* at 12. It is not proportional to the needs of this case for the Government to identify the location of all towers owned by the United States in South Carolina. Nor is it proportional for the Government to identify the location of all LLWAS in South Carolina with no time limit.

Accordingly, the undersigned grants Defendant's motion to compel in part, limiting the relevant discovery requests as follows:

INTERROGATORY NO. 6:

Identify the location of all Low Level Wind Shear Alert Sensors (LLWAS) in South Carolina USED BY PLAINTIFF FOR THE

LAST TEN YEARS and for each specify: 1) whether Plaintiff leased, purchased, or condemned the land on which the tower is located; 2) the cost paid for the lease, purchase, or condemnation of such land; and 3) when any such was lease, purchase, or condemnation was effectuated.

INTERROGATORY NO. 7:

1) Identify the location of all towers owned by Plaintiff in South Carolina, whether communications, satellite, antennas, or other, THAT PLAINTIFF HAS leased, purchased, or condemned the land on which the tower is located; 2) the cost paid for the lease, purchase, or condemnation of such land; and 3) when any such lease, purchase, or condemnation was effectuated.

REQUEST NO. 8:

For any and all Low Level Wind Shear Alerts Sensors (LLWAS) identified in Plaintiff's answer to Interrogatory No. 6, provide a copy of any lease, amended lease, deed, or condemnation notice entered into, executed, or filed within the last ten (10) years.

REQUEST NO. 9:

For any and all towers owned by Plaintiff in South Carolina that were identified in Plaintiff['s] answer to Interrogatory No. 7, provide a copy of any lease, amended lease, deed, or condemnation notice entered into, executed, or filed within the last ten (10) years.

[ECF No. 25-1 at 9–11, ECF No. 25-2 at 10, 12].[4]

---

[4] As indicated above, the Government argues that Defendant's discovery requests are "potentially requesting sensitive national security information." [ECF No. 29 at 2]. To the extent this concern becomes reality, the parties may revisit this issue with the court as discovery progresses.

III.   Conclusion and Recommendation

For the foregoing reasons, the undersigned grants in part and denies in part Defendant's motion to compel, as discussed above. [ECF No. 25].

IT IS SO ORDERED.

December 20, 2023                                        Shiva V. Hodges
Columbia, South Carolina                         United States Magistrate Judge